## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

Sanjay Tripathy,

                        Plaintiff,

            v.

Andrea N. Schneider, et al.,

                        Defendants.

**REPORT and
RECOMMENDATION**

21-cv-6339-FPG-MJP

## APPEARANCES

For Plaintiff:

**Sanjay Tripathy, *pro se***
2013 Jadewood Drive
Morrisville, NC 27560

For Defendants:

**Muditha Halliyadde, Esq.**
Assistant Attorney General
Office of the Attorney General
Rochester Regional Office
144 Exchange Blvd, Ste 200
Rochester, NY 14614

## INTRODUCTION

Plaintiffs often wish to add claims and facts to their complaints. Because federal courts take a generous approach to adding claims and facts, they frequently allow plaintiffs to make changes. But courts will not permit pointless amendments.

Courts use the term "futile" for such amendments. They are pointless, or futile, because if the plaintiff tried to bring them in his original complaint, the court would dismiss them. Here, I report and recommend that the Hon. Frank P. Geraci, Jr., Senior District Judge, find **all of**

Tripathy's proposed amendments futile and thus **DENY** his motion to amend. I provide an overview of why I recommend denial.

## SUMMARY

### *Tripathy's proposed amendments are futile for two sets of reasons.*

Tripathy's proposed changes to his complaint are futile for two independent sets of reasons. I note that I have addressed his RLUIPA claim separately below.

**Jurisdictional defects.** The first set involves this Court's lack of jurisdiction. *First*, Tripathy has not exhausted administrative remedies. And *second*, state courts have exclusive jurisdiction over his state claims. *Third*, he cannot sue state agencies and officials in their official capacities under the Eleventh Amendment. I find this is true of all of Tripathy's federal claims, including RLUIPA.

**Pleading failures.** Setting aside jurisdictional defects, the other set of reasons involves how Tripathy wrote his proposed amended complaint. Tripathy fails to plead adequately several of the claims he would like to add.   These claims include Section 1983 and 1985 conspiracy, in addition to a garden variety Section 1983 claim.

*First*, Tripathy fails to state a claim for Section 1983 and 1985 conspiracy because he fails to plead an underlying constitutional violation. *Second*, his conspiracy claims also fail because they are based on conclusory allegations. *Third*, even if Tripathy adequately pled the

conspiracy claims, both of his conspiracy claims are barred by the intra-corporate conspiracy doctrine. *Finally*, Tripathy fails to state any Section 1983 claims—either deliberate indifference or conspiracy—because he fails to plead personal involvement.

### Tripathy's RLUIPA claim is tricky—but still futile.

**Jurisdictional defects.** Tripathy's RLUIPA claim is thornier. I start with jurisdictional defects. As indicated, I find he cannot sue state officials in their official capacities under RLUIPA. Tripathy likewise cannot obtain injunctive-style relief under RLUIPA because he successfully vacated his conviction under New York State law. DOCCS released him.

**Monetary damages.** But Tripathy argues he is entitled to monetary damages under RLUIPA against Defendants in their individual capacities. RLUIPA's statutory language provides two potential paths to monetary damages.

*The first path*. The Second Circuit barred the first path, "concluding that RLUIPA does not provide a cause of action against state officials in their individual capacities because the legislation was enacted pursuant to Congress' spending power[.]" *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013). Tripathy argues that *Washington v. Gonyea* is no longer good law. But I disagree.

*The second path*. The second path is even more tricky. Congress provided an alternative basis for RLUIPA under the Commerce Clause.

*Washington v. Gonyea* explicitly does not apply to this basis. Even assuming Tripathy could state a RLUIPA claim under the Commerce Clause, which I find, in any event, he cannot, he fails to show a connection to interstate commerce.

In sum, Tripathy's RLUIPA claim is futile because of pleading deficiencies and jurisdictional defects.

### *I report and recommend that the Hon. Frank P. Geraci, Jr., District Judge, deny Tripathy's motion to amend in its entirety.*

For the reasons I provide, I report and recommend that Judge Geraci **DENY** Tripathy's motion to amend in its entirety. Tripathy has 14 days from the filing of this report and recommendation to file objections.

## BACKGROUND

A New York City jury convicted Tripathy of a criminal sexual act in the first degree, sexual abuse in the first degree, and related offenses in May 2018. The Court sentenced Tripathy to seven years of imprisonment. The First Department affirmed his conviction. *See generally, People v. Tripathy*, 187 A.D.3d 515 (1st Dep't 2020), *lv. denied*, 36 N.Y.3d 1101 (2021).

After his unsuccessful appeals, Tripathy was remanded to DOCCS custody. From August 2018 to January 2021, he was at Gowanda. *See Tripathy v. McCloskey*, No. 21-cv-6584 (CS), 2021 WL 5771129, at *1 (S.D.N.Y. Dec. 6, 2021). DOCCS moved Tripathy to

4

Fishkill in January 2021, and again from Fishkill to Collins in October 2021. *See id.*

DOCCS released Tripathy in November 2022 after he successfully moved to vacate under CPL § 440.10. *See Tripathy v. Brotz*, No. 6:22-cv-6469-FPG, 2023 WL 4032831, at *1 (W.D.N.Y. June 15, 2023). While incarcerated and since, Tripathy has not been idle. Tripathy has several cases pending before this Court, among others. Many of his other cases present similar claims. That does not decide, one way or the other, whether his claims may proceed here. But I analyze his claims (and proposed claims) only in the case before me.

### *After the Court rejects his initial attempts at amending, Tripathy brings the pending motion to amend.*

Tripathy's proposed second amended complaint has taken him considerable time to file. After filing his amended complaint, Tripathy made several attempts to file a second amended complaint. The Court rebuffed him. (Text Order, ECF No. 45, Feb. 28, 2023; Text Order, ECF No. 25, Aug. 18, 2022.) Tripathy eventually filed the pending motion to amend. (ECF No. 47, Apr. 26, 2023.) His pending motion to amend again attempts to add new claims against new defendants.

Defendants opposed Tripathy's pending motion to amend.[1] ([ECF No. 52](#), May 5, 2023.) Tripathy filed a reply. ([ECF No. 53](#), May 12, 2023.) On September 4, 2023, Tripathy moved for expedited consideration of his motion to amend. ([ECF No. 47](#), Sept. 4, 2023.) I denied that motion by text order on October 19, 2023. (ECF No. 59.) This report and recommendation followed.

### *This case is about Tripathy's exposure to ETS.*

This case is about Tripathy's exposure to cigarette smoke while incarcerated at Gowanda Correctional Facility. (Am. Compl. at 8 ¶ 2, [ECF No. 3](#), June 11, 2021.) In the operative amended complaint, Tripathy alleges that he suffered adverse effects from environmental tobacco smoke ("ETS") due to lax enforcement of DOCCS' smoking rules at Gowanda. (*Id*. at 14.)

---

[1] I pause to note that Defendants' opposition violates Loc. R. Civ. P. 10(a)(4) ("[D]ocuments must have at least one-inch margins on all four sides[.]") (alterations added). This is apparent when comparing the certificate of service in Defendants' memorandum of law with the final page of the body of the memorandum of law. (Def.'s Mem. of Law in Opp'n at 22–23, [ECF No. 52-1](#), May 5, 2023.) If Defendants needed additional pages, they should have asked. Failure to comply with this rule in the future may result in the rejection of filings. But I do not find it appropriate to reject the memorandum of law at this point. *See Kelly v. Snap-on, Inc.*, No. 21-CV-729-LJV, 2023 WL 3579068, at *3 (W.D.N.Y. May 22, 2023) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001), *abrogated on other grounds by Fross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.") (cleaned up).

Despite a DOCCS policy prohibiting smoking at DOCCS facilities, Tripathy alleges rampant indoor smoking by inmates and staff. (Am. Compl. at 14, ECF No. 3.) At Gowanda, for example, Tripathy alleged his cellmate smoked "over 5 packs of cigarettes per day." (*Id.* at 16.) He alleges that such exposure to ETS has exacerbated his medical conditions, including asthma, pulmonary disease, stress, and high blood pressure. (Am. Compl. at 21–23, ECF No. 3; Proposed 2d Am. Compl. ¶¶ 2(e)–(g), ECF No. 47, Apr. 26, 2023.) Beyond his health problems, Tripathy alleges that ETS is difficult for him because, as a Hindu, he must avoid tobacco products and cigarette smoke. (Am. Compl. at 21, ECF No. 3; Proposed 2d Am. Compl. ¶ 2(c), ECF No. 47.)

### *Tripathy seeks to add similar claims about ETS against other DOCCS facilities.*

Tripathy seeks to add similar claims to those he brought against Gowanda against officials at Fishkill and Collins Correctional Facilities. (Proposed 2d Am. Compl. at 7, ECF No. 47 (listing defendants to be added).) I will refer to the groups of defendants associated with these facilities as either the "Fishkill Defendants" or the "Collins Defendants."[2]

---

[2] The Fishkill Defendants are: Sharon Frost; Akinola Akinyombo; and Edward Burnett. (Proposed 2d Am. Compl. at 7, ECF No. 47.) The Collins Defendants are: Joel L. Terragnoli; Richard Moffit; and Leanne Latona. (*Id.*)

Tripathy alleges the Fishkill and Collins Defendants continued to expose him to ETS. Like in Gowanda, Tripathy alleges that ETS at Fishkill and Collins "got worse … due to constant, relentless[,] and excessive exposure to Indoors ETS." (*Id*. at 12 ¶ 2(f).) Tripathy attributes his worsened health to "excessive ETS." (*Id*. ¶ 2(g).) Recall that ETS is difficult for Tripathy as a "life-long … Hindu." (*Id*. at 13 ¶ 2(h).) He is required to avoid it.

### *Tripathy files grievances about ETS at Gowanda, but not about ETS at Fishkill or Collins.*

Given his difficulties with ETS, Tripathy states that he completed the grievance process regarding ETS at Gowanda. (Am. Compl. at 69–73, ECF No. 3.) But Tripathy states that he "did not file separate grievances at Fishkill and Collins." (Proposed 2d Am. Compl. at 14 ¶ 2(i), ECF No. 47.) Instead, "he spoke and wrote to Defendants to ask for relief which was denied." (*Id*.) He does not state to whom he wrote or with whom he met other than generally claiming he met and wrote to all Defendants.

The additional details Tripathy does provide are limited. He adds that he "met and wrote (sent them copies of his Grievances, letter to Albany and elected officials) personally to" the Fishkill and Collins Defendants. (*Id*. at 16 ¶ 2(l).) Tripathy notes that he should be able to obtain meeting logs and provides "names, places and instances … where he met with Defendants to establish timelines, events, and thus

personal involvement and liability of Defendants." (*Id*.) But these are not currently in his proposed second amended complaint.

### *Tripathy alleges a substantial burden on his First Amendment free exercise rights.*

Tripathy alleges that all three facilities' pervasive ETS "left" him "with no choice," forcing "him many times to violate his core and sincerely held religious beliefs[.]" (*Id*. at 15 ¶ 2(j).) I assume Tripathy means that exposure to ETS amounts to a violation of his sincerely held religious beliefs as a Hindu.

Tripathy indicates that DOCCS' burden of providing him an exception to ETS exposure would have been low: "DOCCS/Defendants could have easily provided Petitioner with an exception with minimal/zero impact to prison operations, but chose not to[.]" (*Id*.) And he alleges not only a direct impact on himself, but an impact on his family that implicates interstate and foreign commerce:

> As a direct result of ETS, and Defendants [sic] denial of any relief across all [three] facilities where Petitioner was based, his family and friends had to send him (across state lines and also from India) extra books, clothing, food, other items, money[,] etc[.] (to sustain himself), and also make additional trips to see him, therefore impacting [interstate] commerce, and commerce between nations.

(*Id*.) Tripathy adds this allegation specifically to bolster his RLUIPA claims. Tripathy distinguishes between the Commerce Clause and Spending Clause bases for RLUIPA.

***Tripathy alleges the personal involvement of the Collins and Fishkill Defendants, and that they conspired to deprive him of his rights.***

Tripathy alleges that the Collins and Fishkill Defendants "were personally involved." (*Id*. at 16 ¶ 2(m).) He alleges personal involvement because all these defendants "directly den[ied]" him relief from ETS, yet "were aware" and "had the direct authority and responsibility to provide relief." (*Id*. at 16–17 ¶ 2(m).) Tripathy also states that the Collins and Fishkill Defendants "also engaged in conspiracy." (*Id*.) Beyond these general statements, however, he provides no additional detail.

## MAGISTRATE JUDGE JURISDICTION

Courts "should freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Still, this Court has discretion to decide if a motion to amend should be granted. *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.,* 401 U.S. 321, 330 (1971) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) ("It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court."). But when I deny a motion to amend as a magistrate judge, things are trickier.

***This is an R&R—not a decision and order—but case law does not clearly require that I do this.***

Courts, including in this District, are a bit all over the map about whether, as a magistrate judge, I can issue a decision and order when denying a motion to amend for futility. *Compare Antonacci v. KJT Grp.,*

*Inc.*, No. 21-CV-6578L, 2022 WL 1656787, at *2 (W.D.N.Y. May 25, 2022) (holding that where a magistrate judge finds "that amendment should be denied on the ground of futility" the decision must be by report and recommendation because this "amounts to a conclusion that the proposed amendment would not withstand a motion to dismiss"); *Houghtaling v. Eaton*, No. 14-CV-6416-EAW-JFW, 2017 WL 9517690, at *7 (W.D.N.Y. Sept. 29, 2017), *adopted*, No. 6:14-CV-6416 EAW, 2018 WL 522342 (W.D.N.Y. Jan. 22, 2018) ("Because my findings and conclusions regarding the futility of plaintiff's motion to amend the second amended complaint to add Zmuda as a defendant are case-dispositive with respect to Zmuda, my determinations are made as part of a Report and Recommendation and not a Decision and Order.") (collecting cases) *with Thomas v. ConAgra Foods, Inc.*, No. 6:20-CV-06239-EAW-MJP, 2022 WL 3699408, at *2 (W.D.N.Y. Aug. 26, 2022) ("However, as this Court has previously recognized, authority in this Circuit supports a conclusion that review of a motion to amend—even the denial of such a motion—is nondispositive in nature[.]"). "The thinking reflected" in holding that futility analysis requires a report and recommendation is "that by declaring a proposed amendment futile, the magistrate judge has effectively engaged in the Rule 12(b)(6)[] analysis and has decided the amendment fails to state a claim, thus making the decision dispositive."

*Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 595 (7th Cir. 2006) (footnote omitted).

True, "[m]otions to dismiss and for summary judgment are clearly classified as dispositive motions by" 28 U.S.C. § 636(b)(1)(A). *HCC, Inc. v. R H & M Mach. Co.*, 39 F. Supp. 2d 317, 322 (S.D.N.Y. 1999). But these motions are qualitatively distinct from motions to amend; they do "not terminate" the "existing lawsuit," rather, they only prevent the addition of defendants or claims. *Hall*, 469 F.3d at 595; *accord Kenny v. United States*, 489 F. App'x 628, 630 (3d Cir. 2012) (noting that "[s]tatutory and precedential authority largely rejects" the argument that motions to amend are dispositive). Motions to amend thus seem to fall within a magistrate judge's purview "to hear and determine any pretrial matter pending before the court[.]" 28 U.S.C. § 636(b)(1)(A). The plain language of "any pretrial matter" would seem to encompass motions to amend as they are incident to discovery. Even so, until the Second Circuit weighs in, or until the Western District achieves uniformity on this question, I find it appropriate to issue reports and recommendations when denying motions to amend for futility.

## LEGAL STANDARD

Turning to Tripathy's motion to amend, I can recommend denial for several reasons. *See Foman*, 371 U.S. at 182 (noting that leave to amend may be denied for undue delay, bad faith, dilatory motive, undue prejudice, or futility). This includes where allowing a plaintiff to amend

his complaint would be pointless. *See Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) ("One good reason to deny leave to amend is when such leave would be futile.").

So, I must see if Tripathy's proposed second amended complaint plausibly states claims under Rule 12(b)(6). *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). I conclude that it does not. *See Tannerite Sports, LLC v. NBC Universal News Grp.*, 864 F.3d 236, 252 (2d Cir. 2017) (holding that motions to amend are futile if they fail to "pass muster under Rule 12(b)(6)") (internal quotations omitted).

"To survive a motion to dismiss" under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.* (citing *Twombly*, 550 U.S. at 556).

Tripathy's proposed second amended complaint fails to pass muster under Rule 12(b)(6). This is true even though I must hold Tripathy's complaint "to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976)). "It is well-established that the sub-missions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)) (emphasis removed). But I should recommend dismissal of even a *pro se* complaint if it lacks "suffi-cient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## TRIPATHY'S INCORPORATION OF DOCUMENTS

One final housekeeping matter. Tripathy "plead[s] for the Court to reference his original complaint, amended complaint, exhibits, vari-ous motions, letters and responses (all on the record) in the event[] things may have been missed or not detailed." (Proposed 2d Am. Compl. at 10 ¶ 2(a), ECF No. 43.) While I may consider documents attached as exhibits and incorporated by reference, I reject Tripathy's free-wheeling approach. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). That said, I can (and will) consider allegations made for the first time in Tripathy's reply papers. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual

allegations made by a *pro se* party in his papers opposing the motion."). But I will not consider everything Tripathy has filed. This decision is long enough as it is. And an amended complaint is meant to take the place of the operative pleading, not supplement it, or be supplemented by the pleading the amended complaint is meant to replace.

## ELEVENTH AMENDMENT IMMUNITY

### *Tripathy's claims against the Fishkill and Collins Defendants in their official capacities are futile under the Eleventh Amendment.*

Tripathy asserts claims against Defendants in their official capacities. He attempts to bring each claim in his proposed second amended complaint against "[a]ll Defendants (official and individual capacity)." (Proposed 2d Am. Compl. ¶¶ 1(a)–(f), ¶¶ 3–6, ECF No. 47.) New York State has not waived sovereign immunity for the claims Tripathy brings. Tripathy thus cannot sue DOCCS personnel in their official capacities. Tripathy's claims against DOCCS personnel in their official capacities are futile. The Eleventh Amendment prevents these claims, rendering them futile for purposes of amending his complaint.

The Eleventh Amendment bars lawsuits by citizens against a state unless the state has waived this immunity. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 68 (1996) ("Although a case may arise under the Constitution and laws of the United States, the judicial power does not extend to it if the suit is sought to be prosecuted against a State, without her consent, by one of her own citizens."). This immunity

extends to state agencies, like DOCCS, and state agents in their official capacities. *See Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The [E]leventh [A]mendment bars recovery against an employee who is sued in his official capacity[.]") (alterations added). Tripathy thus cannot bring claims against such defendants in their official capacities. *See Guarneri v. West*, 518 F. Supp. 2d 514, 519 (W.D.N.Y. 2007) ("To the extent that plaintiff's claims are asserted against defendants in their official capacities, the claims are barred by the Eleventh Amendment and must be dismissed. The Eleventh Amendment bars lawsuits by citizens against a state unless the state has waived its sovereign immunity.") (citation omitted).

### *Tripathy's RLUIPA claim fares no better.*

While the analysis is somewhat different, Tripathy's RLUIPA claim likewise does not escape the Eleventh Amendment. The Supreme Court held in *Sossamon v. Texas* that "States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver." 563 U.S. 277, 293 (2011). His RLUIPA claim against the Fishkill and Collins Defendants in their official capacities is accordingly futile.

## EXCLUSIVE STATE COURT JURISDICTION

"Pursuant to Correction Law § 24, any claim against" a DOCCS officer under New York law "arising out of any act done or the failure to

16

perform any act within the scope of the employment and in the discharge of the duties' of said officers 'shall be brought and maintained in the court of claims as a claim against the state.'" *Crist v. Rosenberger*, 219 A.D.3d 569, 570 (2d Dep't 2023) (quoting *Bahadur v. New York State Dept. of Correctional Servs.*, 88 A.D.3d 629, 630–31 (2d Dep't 2011)). Tripathy's state law claims are thus futile because this Court lacks jurisdiction to hear them. *See Davis v. McCready*, 283 F. Supp. 3d 108, 123–24 (S.D.N.Y. 2017) ("Courts in the Second Circuit have long held that Section 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment.") (collecting cases).

His remedy for DOCCS' employee's conduct "lies in the Court of Claims against the State of New York, not this Court" *Est. of King by & through King v. Annucci*, No. 9:20CV1413 (TJM/ML), 2023 WL 6122868, at *15 (N.D.N.Y. Sept. 19, 2023). Because of this, Tripathy's proposed state law claims are futile. I accordingly report and recommend that Judge Geraci not permit him to add them to his complaint. *Davis*, 283 F. Supp. 3d at 124 ("Under Section 24, any tort claim arising under New York law … must be dismissed for lack of subject matter jurisdiction.") (cleaned up); *see also Cruz v. New York*, 24 F. Supp. 3d 299, 309 (W.D.N.Y. 2014) ("Plaintiff's state law claims against Defendants … are

barred because New York Correction Law § 24 shields them from liability for state law claims in both state and federal court.").

## EXHAUSTION OF REMEDIES

***Despite having no excuse, Tripathy failed to exhaust administrative remedies.***

The Prisoner Litigation Reform Act required Tripathy to exhaust all possible administrative remedies at all possible levels. 42 U.S.C. § 1997e(a). I note that this case plainly relates to prisoner life as it concerns prison conditions. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). Tripathy does not argue otherwise.

Absent another exception, then, Tripathy had "to follow the prescribed three-step grievance procedure set forth at 7 N.Y.C.R.R. § 701.5." *Johnson v. Annucci*, 314 F. Supp. 3d 472, 475 (W.D.N.Y. 2018); *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (noting that prisoners must use "all steps that the agency holds out, and do[] so properly"). Yet Tripathy admits that he did not file grievances about ETS at Fishkill or Collins. (Mot. to Am. at 14 ¶ 2(i), ECF No. 47 ("Petitioner did not file separate grievances at Fishkill CF and Collins CF.").)

Tripathy did not need to admit this. "[A] prisoner need not specifically plead or demonstrate exhaustion in the complaint because 'failure

to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement.'" *Rucker v. Giffen*, 997 F.3d 88, 92 (2d Cir. 2021) (quoting *Williams v. Correction Officer Priatno*, 829 F.3d, 118, 122 (2d Cir. 2016)). Since he did, however, I recommend dismissal because "it is apparent from the face of the complaint" that Tripathy "failed to exhaust administrative remedies." *Allah v. Adams*, 573 F. Supp. 3d 904, 910 (W.D.N.Y. 2021) (quoting *Randle v. Alexander*, 960 F. Supp. 2d 457, 483 (S.D.N.Y. 2013)); *see also Williams*, 829 F.3d at 122 (citation omitted) (same).

Still, sometimes prisoners like Tripathy have an exception to fulfilling the grievance requirement. *See Green Haven Prison Preparative Meeting v. DOCCS*, 16 F.4th 67, 81 (2d Cir. 2021) (quoting *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015)) ("The PLRA requires the exhaustion of remedies only insofar as such remedies are 'available to the inmate.'").[3] Here, Tripathy argues that pursuing administrative remedies would be futile because the "administrative

---

[3] I have edited this citation for readability. The full citation is as follows: *See Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. New York State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 81 (2d Cir. 2021), *cert. denied sub nom. Green Haven Preparative Meeting v. New York State Dep't of Corr. & Cmty. Supervision*, 142 S. Ct. 2676 (2022) (quoting *Hubbs v. Suffolk County Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015)) ("The PLRA requires the exhaustion of remedies only insofar as such remedies are 'available to the inmate.'").

procedure" here "operate[d] as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross v. Blake*, 578 U.S. 632, 643 (2016). This is referred to as "futility" of prison grievance procedures.[4]

Tripathy presents two arguments for futility of prison grievance procedures. First, he argues that he did not need to exhaust administrative remedies about ETS at Gowanda because the "DOCCS smoking policy was across all prisons." (Proposed 2d Am. Compl. ¶ 2(i), ECF No. 47.) Second, he argues that because he "reached out extensively to all Defendants … via letters, meetings and communications of all letters," he successfully exhausted his administrative remedies. (Reply at 27, ECF No. 53.) I dispose of Tripathy's second argument, then his first.

---

[4] I also note that Tripathy had adequate time to exhaust administrative remedies. Tripathy presents no argument that he was transferred before having sufficient time to grieve the conditions at Collins and Fishkill. *Cf. Romano v. Ulrich*, 49 F.4th 148, 150 (2d Cir. 2022) ("Romano's transfer out of DOCCS custody served as a 'dead end' that effectively rendered his administrative remedy unavailable to him.") (citing *Ross*, 578 U.S. at 643). And as I discussed, Tripathy spent several months at each facility where he was incarcerated. *See Tripathy v. McCloskey*, 2021 WL 5771129, at *1. Because it appears that Tripathy "ha[d] sufficient time to pursue administrative remedies" at Fishkill and Collins, he is not excused from the exhaustion requirement for not having sufficient time to grieve. *Flowers v. City of New York (DOCS)*, 668 F. Supp. 2d 574, 578 (S.D.N.Y. 2009) (citing *Berry v. Kerik*, 366 F.3d 85, 86–88 (2d Cir. 2004)).

**_Tripathy's letters to DOCCS personnel do not suffice for exhaustion._**

Speaking and writing to the Fishkill and Collins Defendants is not enough for Tripathy to exhaust administrative remedies. _See, e.g., Girard v. Chuttey_, 826 F. App'x 41, 45 (2d Cir. 2020) (citing _Woodford v. Ngo_, 548 U.S. 81, 90 (2006)) (holding that "letters to prison officials did not constitute exhaustion" because "they did not conform to the agency's grievance procedures"). A prisoner cannot satisfy the PLRA exhaustion requirement through "enough informal steps" such as letters and communications. _Dabney v. Pegano_, 604 F. App'x 1, 5 (2d Cir. 2015) (quoting _Macias v. Zenk_, 495 F.3d 37, 44 (2d Cir. 2007)). So, no matter how many letters Tripathy wrote, or how many times he "raised the issue," as he puts it, such communications do not satisfy the PLRA's exhaustion requirement. _See Collins v. Goodliff_, No. 12-CV-6595-FPG, 2014 WL 6065670, at *2 (W.D.N.Y. Nov. 13, 2014) ("Numerous courts considering th[e] issue have found that complaints that were not filed as formal grievances cannot satisfy the exhaustion requirement.") (collecting cases).

**_Tripathy still needed to exhaust administrative remedies about enforcement of DOCCS' ETS policy at Fishkill and Collins._**

Prisoners are likewise exempt from the exhaustion requirement when administrative remedies are "unavailable." _Ross_, 578 U.S. at 643. Tripathy argues that DOCCS' grievance procedure was unavailable because it amounted to "a simple dead end—with officers unable or

consistently unwilling to provide any relief to aggrieved inmates." *Williams*, 829 F.3d at 123.

**Statewide and facility-specific ETS policies do not render administrative remedies unavailable.** The Second Circuit has noted that where a policy "is outside the control of the jail" or facility, it may not be grievable. *Saeli v. Chautauqua Cnty., NY*, 36 F.4th 445, 457 (2d Cir. 2022); *see also id.* at 458 ("Thus, if the jail captain did not have the authority to change the handcuffing policy—the sole subject of the claim against the County—then that claim was not grievable."). This was true in another case of Tripathy's. *See Tripathy v. McCloskey*, 2021 WL 5771129, at *1 n.2 (noting that a DOCCS official "stated in her declaration that the DOCCS menu is the same statewide and cannot be altered for a single facility"). There, the Court assumed that such policies "are equally applicable to conditions at Fishkill and Collins." *Id*.

But unlike *Tripathy v. McCloskey* or *Saeli*, any DOCCS' ETS policy is not outside of the control of each facility. Even if Tripathy is correct that DOCCS has a statewide ETS policy, it would make no difference. This case is not about a policy violating Tripathy's rights that is outside the control of the Fishkill and Collins Defendants like a DOCCS-mandated menu and methods for preparing food, as was true in *McCloskey*, or a method of handcuffing, as in *Saeli*. This case is about Tripathy's belief that the Fishkill and Collins Defendants failed to enforce a policy

22

of smoke-free prison living environments that was theirs to enforce. (Am. Compl. at 83,[5] Ex. O, <u>ECF No. 3</u>, June 11, 2021 ("Ultimately only outdoor smoking will be permitted."); *id.* at 74, Ex. K ("CORC asserts that indoor smoking is prohibited under the state's Clean Indoor Act[.]"); *id.* at 91, Ex. O (noting that policy would be fully in force by June 30, 2001).) Failure to enforce the Clean Air Act or any policy flowing from it is grievable because the Fishkill or Collins Defendants could remedy Tripathy's grievance, unlike in *McCloskey* or *Saeli* where the policy was out of the correctional facility's control.

*Second*, as Defendants correctly point out, each correctional facility appears to have a separate ETS policy that it must enforce. (*Id.* at 78, Ex. M.) Tripathy's grievance concerning ETS at Gowanda was rejected in part because "the *facility* administration prohibits smoking in any facility building." (*Id.* at 74, Ex. K.)

In sum, Tripathy should have at least attempted to grieve each facility's enforcement of applicable ETS policies, assuming the facilities here did fail to comply with DOCCS' ETS policies or their own. *See Ward v. LeClaire*, No. 07-CV-6145 MAT, 2013 WL 178139, at *4–5 (W.D.N.Y. Jan. 16, 2013) ("Defendants have adduced sufficient evidence to establish that [the correctional facilities each] had a functioning grievance

---

[5] I am using the page numbers provided by CM/ECF rather than those Tripathy handwrote onto the amended complaint.

system during the relevant time period that was, in fact, available to Plaintiff."). Because Tripathy failed to do so, I report and recommend that his federal claims be found futile.

**The PLRA's purpose supports my conclusion.** I find yet more support for this conclusion in the purpose of the PLRA. Congress intended the PLRA to allow "a prison to address complaints about the program" or policy "it administers before being subjected to suit[.]" *Barbaro v. U.S. ex rel. Fed. Bureau of Prisons FCI Otisville*, 521 F. Supp. 2d 276, 282 (S.D.N.Y. 2007) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). So, here, "the fundamental purposes of the grievance requirement would not be served if a grievance filed at one facility regarding treatment obtained at that facility was said to be sufficient to exhaust administrative remedies relating to a separate, even though similar, claim asserted against different medical personnel." *Tafari v. Stein*, No. 01CV0841, 2008 WL 3852150, at *2 (W.D.N.Y. Aug. 15, 2008). I find that Tripathy needed to exhaust administrative remedies separately at Fishkill and Collins.

Finally, my finding falls well within other purposes of the PLRA. *See Woodford* 548 U.S. at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural

rules.”). Tripathy's federal claims are thus futile because he failed to exhaust them.

## THE RLUIPA CLAIM

The proposed amended complaint includes a claim under the Religious Land Use and Institutionalized Persons Act, or “RLUIPA,”[6] for short. (Proposed 2d Am. Compl. at 21–34 ¶¶ 4(a)–(i), [ECF No. 47](#).) I already recommended that Judge Geraci reject Tripathy's RLUIPA claim for failure to exhaust administrative remedies. *See Green Haven Prison Preparative Meeting*, 16 F.4th at 82 (“Here, the Incarcerated Plaintiffs provide no evidence that a grievance asserting that a prisoner's religious liberty has been violated … Plaintiffs are thus unable to avoid the exhaustion requirement[.]”).

“Under RLUIPA, a plaintiff must demonstrate that the state has imposed a substantial burden on the exercise of his religion; however, the state may overcome a RLUIPA claim by demonstrating that the challenged policy or action furthered a compelling governmental interest and was the least restrictive means of furthering that interest.” *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010) (discussing 42 U.S.C.

---

[6] 42 U.S.C. § 2000cc *et seq.*

§ 2000cc-1(a)). RLUIPA plaintiffs—as the acronym suggests—can include prisoners like Tripathy.

RLUIPA protects prisoners like Tripathy from a "government" imposing a substantial burden on their religious exercise. 42 U.S.C. § 2000cc-1(a). "Government," under RLUIPA, means any "State, county, municipality, or other governmental entity created under the authority of a State[,]" along with subdivisions thereof—and even those "acting under color of State law[.]" 42 U.S.C. §§ 2000cc-5(4)(A)(i)–(iii).

RLUIPA applies in two instances. First, RLUIPA applies if "the substantial burden is imposed in a program or activity that receive[s] Federal" funding. *Id*. § 2000cc-1(b)(1). Alternatively, it applies if "the substantial burden affects, or removal of that substantial burden would affect" interstate commerce. *Id*. § 2000cc-1(b)(2). Prisoners so affected may obtain "appropriate relief against a government."[7] *Id*. § 2000cc-2(a).

These twin "source[s] of federal power to enact a law" are, in the words of the Sixth Circuit, "a form of insurance[.]" *Haight v. Thompson*,

---

[7] To the extent Tripathy seeks injunctive-style relief, his claim is moot. Only a "person residing in or confined to an institution" may bring a RLUIPA claim. 42 U.S.C. § 2000cc-1(a). Tripathy is currently released. I therefore find that his RLUIPA claim—insofar as it seeks injunctive-style or declaratory relief—is moot. *See Green Haven Prison Preparative Meeting*, 16 F.4th at 83 (noting that "the Non-Incarcerated Plaintiffs make no claims under RLUIPA, nor [could] they"). I analyze only his money damages claims under RLUIPA.

763 F.3d 554, 569 (6th Cir. 2014). Courts generally analyze RLUIPA's Spending Clause basis, being that plaintiffs only raise that basis of federal power. *See, e.g., Sossamon v. Texas*, 563 U.S. 277, 289–91 (2011). (rejecting RLUIPA Spending Clause argument without addressing Commerce Clause basis).

But Tripathy raises the prospect of both the Commerce Clause basis and the Spending Power basis.

### Controlling Second Circuit precedent only rejects RLUIPA monetary damages under the Spending Clause.

"RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities." *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014) (citing *Washington*, 731 F.3d at 145–46). While courts in this circuit have often quoted this language to reject RLUIPA claims, in so doing, they leave out something critical.

Congress undoubtedly enacted RLUIPA under its spending power. *Washington*, 731 F.3d at 145–46. But, as discussed, Congress likewise used (or attempted to use) its commerce power when enacting RLUIPA. *Id.* at 146 (citing 42 U.S.C. § 2000cc-1(b)) ("We note that Congress invoked its power to regulate interstate and foreign commerce as an alternative basis for enforcing section 3 of RLUIPA."). And in *Washington*, the Second Circuit declined to address the Commerce Clause basis for RLUIPA, leaving the commerce clause basis for another day:

> The commerce clause basis for RLUIPA is therefore not properly before the Court, and we decline to decide whether RLUIPA authorizes individual-capacity suits under the imprimatur of the commerce clause.

*Id*. The Second Circuit explained its holding by stating that the prisoner "pled no facts indicating that the restriction of his religious rights had any effect on interstate or foreign commerce." *Id*. Thus, Tripathy may not recover under the Spending Clause—unless he raises a Commerce Clause basis for his claim.

Not recognizing the commerce power basis, the Fishkill and Collins Defendants cite *Holland* for the proposition that Tripathy cannot recover *any* monetary damages under RLUIPA. But *Holland* expressly relies on *Washington* for that proposition. And the Second Circuit's holding in *Washington* was expressly limited to RLUIPA's Spending Clause basis.[8] I therefore turn next to the question of whether Tripathy may

---

[8] Tripathy spills much ink arguing that the Supreme Court's decision in *Tanzin v. Tanvir*, 592 U.S. 43 (2020) renders *Washington v. Gonyea* bad law. He argues I should not even consider *Washington*, or that this Court should certify an appeal for the Second Circuit to consider the issue. I reject Tripathy's invitation.

In *Tanzin*, the Supreme Court held that the Religious Freedom Restoration Act (RFRA) permits litigants "to obtain money damages against *federal* officials in their individual capacities." *Id*. at 52 (2020). Granted, RFRA and RLUIPA have similar language. But the very premise on which Tripathy's claim rests, Congress's spending power, undoes his argument about *Tanzin v. Tanvir*:

raise a claim for monetary damages under RLUIPA under the Commerce Clause.

### *Tripathy fails to demonstrate that Defendants' actions had an impact on interstate commerce.*

As stated, RLUIPA applies if "the substantial burden" on Tripathy's free exercise "affects, or removal of that substantial burden would affect," interstate commerce. 42 U.S.C. § 2000cc-1(b). Tripathy must plausibly allege that Defendants' substantial burden imposed on him, ETS, affects (or its removal would affect) interstate commerce. He does not.

---

RLUIPA was enacted pursuant to Congress's powers under the Spending Clause, thereby allowing Congress to impose certain conditions, such as civil liability, on the recipients of federal funds, such as state prison institutions. Because *state officials* are not direct recipients of the federal funds, and thus would have no notice of the conditions imposed on them, they cannot be held individually liable under RLUIPA.

*Mack v. Warden Loretto FCI*, 839 F.3d 286, 303 (3d Cir. 2016) (emphasis added); *accord Landor v. Louisiana Dep't of Corr. & Pub. Safety*, 82 F.4th 337, 344 (5th Cir. 2023) (same). Unlike RLUIPA, Congress enacted RFRA under its Fourteenth Amendment powers. *See Holt v. Hobbs*, 574 U.S. 352, 257 (2015) (noting RFRA's basis in the Fourteenth Amendment and RLUIPA's basis in the Spending and Commerce Clauses); *see also Landor*, 82 F.4th at 344 ("Section 5 of the Fourteenth Amendment and the Spending Clause do not empower Congress to the same degree, and *Tanzin* does nothing to fill that gap.").

I see no nexus between ETS, Defendants' actions or inactions and the purported effect on interstate commerce. Instead, the only reasonable inference here is that the interstate commerce to which Tripathy points would have occurred even if the DOCCS facilities in which he was imprisoned had no ETS. Or, put another way, Tripathy simply alleges that interstate commerce happened, such commerce involved him, and it occurred around the time he allegedly suffered ETS' negative effects. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"). That is a pleading failure, rendering his RLUIPA claim—insofar as it is based on the Commerce Clause—futile.

Tripathy states that "his family and friends had to send him (across state lines and also from India) extra books, clothing, food, other items, money[,] etc[.]" (Proposed 2d Am. Compl. at 15 ¶ 2(j).) But the complaint does not tell us *why* Defendants' conduct around ETS prompted this. Perhaps if friends and family had tried to send him surgical masks to protect him from ETS to which he was allegedly exposed, a commerce nexus would arise. But as pled, I see no relationship between the commerce involving Tripathy and ETS or the Fishkill and Collins Defendants. Without such a nexus, his complaint fails to provide an "allegation that the defendants' actions affected interstate

commerce[.]" *Brown v. Ray*, 695 F. Supp. 2d 292, 298 (W.D. Va. 2010). Remember, the Fishkill and Collins Defendants' actions in placing a substantial burden on Tripathy's free exercise must affect commerce for Tripathy to plead a RLUIPA claim. Because Tripathy fails to plead a connection between their actions and commerce, Tripathy's RLUIPA claim fails.

Even if Tripathy had successfully alleged an interstate commerce nexus here, I would still recommend that his RLUIPA claim be rejected on Commerce Clause grounds because RLUIPA does not clearly provide monetary damages. "If Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute." *Haight* 763 F.3d at 569; *see also id.* at 569–70 (holding that money damages cannot be recovered under RLUIPA because the law fails to meet the "clear-statement rule"). RLUIPA is not unmistakably clear in delineating what falls within the phrase "appropriate relief." And so, numerous courts have rejected monetary damages under RLUIPA outright, notwithstanding the twin exercises of Federal jurisdiction. *Id.* at 570 ("Every circuit to consider the question … has held that RLUIPA does not permit money damages against state prison officials, even when the lawsuit targets the defendants in their individual capacities."); *accord Walker v. Baldwin*, 74 F.4th 878, 883–84 (7th Cir.

2023) (collecting cases). And, as noted, Tripathy cannot obtain injunctive-style relief under RLUIPA.

For these reasons, Tripathy's RLUIPA claim, as pled, is futile. I report and recommend that Judge Geraci reject it as such.

## SECTION 1983 & SECTION 1985 CLAIMS

Tripathy's claims under Sections 1983 and 1985 are likewise futile for several independent reasons. These claims include Section 1983 and 1985 conspiracy, in addition to a garden variety Section 1983 claim.

*First*, Tripathy fails to state a claim for Section 1983 and 1985 conspiracy because he fails to plead an underlying constitutional violation. *Second*, his conspiracy claims also fail because they are based on conclusory allegations. *Third*, even if Tripathy adequately pled the conspiracy claims, both of his conspiracy claims are barred by the intracorporate conspiracy doctrine. *Finally*, Tripathy fails to state any Section 1983 claims—either deliberate indifference or conspiracy—because he fails to plead personal involvement.

### *Tripathy fails to state a conspiracy claim under either Sections 1983 or 1985 because he inadequately alleges an underlying constitutional violation and makes conclusory allegations.*

Tripathy does not demonstrate that Defendants intentionally and purposefully violated his rights, and therefore fails to plead the underlying constitutional rights violation required to state a conspiracy claim. Separately, his conspiracy allegations fail for being conclusory.

**Legal Standard.** Both Section 1983 and 1985 conspiracy claims "require[] a plaintiff to plead a violation of a constitutional right." *Richard v. Fischer*, 38 F. Supp. 3d 340, 352 (W.D.N.Y. 2014) (discussing the requirement in the Section 1985 context); *see also McCloud v. Prack*, 55 F. Supp. 3d 478, 482–83 (W.D.N.Y. 2014) (collecting cases in the Section 1983 context). A plaintiff's allegations must show "an intentional and purposeful deprivation of constitutional rights." *Masri v. Thorsen*, No. 17-CV-4094 (KMK), 2020 WL 1489799, at *9 (S.D.N.Y. Mar. 27, 2020). Accordingly, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Udechukwu v. City of New York*, 333 F. Supp. 3d 161, 169 (E.D.N.Y. 2018) (quoting *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002)) (Section 1983 conspiracy claim); *see also Little v. City of New York*, 487 F. Supp. 2d 426, 441 (S.D.N.Y. 2007) (Section 1985 claim).

**Tripathy inadequately pleads that the Fishkill and Collins Defendants engaged in a Section 1983 conspiracy.** To state a claim for conspiracy under 42 U.S.C. § 1983, "a plaintiff must allege '(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in

furtherance of that goal causing damages.'" *Tripathy v. Brotz*, 2023 WL 4032831, at *10 (quoting *Ciambriello*, 292 F.3d at 324–25). The plaintiff "must allege 'specific instances of misconduct.'" *Id.* (quoting *Ciambriello*, 292 F.3d at 325); *Ocasio v. City of Canandaigua*, 513 F. Supp. 3d 310, 323 (W.D.N.Y. 2021) (explaining that plaintiffs must provide "some details of time and place and the alleged effects of the conspiracy") (citation omitted).

Here, Tripathy fails to allege specific instances of misconduct, including the time and place that the instances occurred. He vaguely alleges that "Defendants at each facility met as a group, conferred, discussed but denied relief." (Proposed 2d Am. Compl. at 17 ¶ 2(m), [ECF No. 47](), April 26, 2023.) He also repeats the same general allegation three times: "Defendants … individually and collectively conferred with DOCCS Officials in Albany, and met with Petitioner on multiple occasions to deny relief." (*Id.* at 35–36 ¶ 5(b), (c), (d).) While Tripathy did not need to list and summarize Defendants' conversations, his repeated general allegations lack *specific facts* tending to show an agreement and concerted action between Defendants to violate his constitutional rights. *See Tripathy v. Brotz*, 2023 WL 4032831, at *11. Because Tripathy does not allege facts showing that Defendants purposefully and intentionally acted in concert to violate his constitutional rights, he fails to adequately allege elements (1) and (2) of a Section 1983 conspiracy claim.

**Tripathy inadequately pleads that the Fishkill and Collins Defendants engaged in a Section 1985 conspiracy.** To state a claim for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Tripathy v. Brotz*, 2023 WL 4032831, at *10 (quoting *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015)). The plaintiff must allege the conspiracy was "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'" *Id.* (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)). "The Second Circuit has 'defined 'class-based animus' to include discrimination based on religion.'" *Masri*, 2020 WL 1489799, at *7 (quoting *Jews for Jesus, Inc. v. Jewish Cmty. Rels. Council, of N.Y., Inc.*, 968 F.2d 286, 291 (2d Cir. 1992)) (collecting cases). A plaintiff must plead "particularized facts" showing religion-based animus. *See id.* at *8 (collecting cases).

Although Tripathy adequately alleges religion-based animus by stating Defendants "ridiculed" his Hindu beliefs, (Proposed 2d Am. Compl. at 35–36 ¶ 5(b), (c), (d), ECF No. 47), animus alone does not show

a rights violation, absent particularized facts.  On top of animus, Tripathy must allege that Defendants intentionally acted, "at least in part," for the purpose of violating his rights. *See Masri*, 2020 WL 1489799, at *9. Alleging that Defendants were merely "aware of a deprivation of the right" is insufficient. *Id.* at *9. Tripathy alleges Defendants denied his accommodations request *because of* prison smoking policies—not because of his religious beliefs. (Proposed 2d Am. Compl. at 17 ¶ 2(m), ECF No. 47.) His allegation that Defendants denied his request for accommodations "despite knowing" about his religious beliefs is insufficient. Tripathy thus fails to allege element (2) of a Section 1985(3) conspiracy, *Tripathy v. Brotz*, 2023 WL 4032831, at *11,[9] and "has not sufficiently alleged that Defendants acted with discriminatory animus in *seeking to deprive him* of any constitutional right," *Masri*, 2020 WL 1489799, at *10 (emphasis added).

**Separately, Tripathy's conspiracy allegations are conclusory.** The Second Circuit has consistently held that conclusory allegations are insufficient to bring a conspiracy claim past the pleading stage.

---

[9] The relevant selection from this citation is as follows: "A conspiracy claim under Section 1985(3) requires a plaintiff to allege: '1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.' *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Britt v. Garcia*, 457 F.3d 264, 269 n. 4 (2d Cir.2006))."

*See Udechukwu*, 333 F. Supp. 3d at 169 (Section 1983 conspiracy claim); *Little*, 487 F. Supp. 2d at 441 (Section 1985 conspiracy claim). A plaintiff's conclusion that a conspiracy occurred based on conclusory allegations is wholly inadequate to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

Here, Tripathy only offers conclusory allegations to support his conspiracy claims. (Proposed 2d Am. Compl. at 35–36 ¶¶ 5(c), (d), ECF No. 47 (stating that "because Petitioner is [a] Hindu," Defendants denied him a religious housing accommodation.)) Even taking as true Tripathy's allegation that Defendants denied him "smoke-free accommodations," (*id*. at 35–36 ¶¶ 5(b), (c), (d)), that alone neither shows a conspiratorial agreement to violate his constitutional rights nor overt acts in furtherance of an agreement. Based on his conclusory allegations, Tripathy concludes, "Clearly, Defendants … indulged in a conspiracy[.]" (*Id*. at 37 ¶ 5(e).) These conclusory allegations are inadequate to state a conspiracy claim. Tripathy fails to provide particular facts showing a conspiracy. Tripathy's Section 1983 and 1985 conspiracy claims thus fail for being pled in a conclusory manner.

### *Even if Tripathy adequately pled his conspiracy claims, both are barred by the intracorporate conspiracy doctrine.*

**Legal Standard.** "The intracorporate conspiracy doctrine bars conspiracy claims against employees of entities such as [DOCCS] (when those employees are alleged to have conspired solely with each other)

unless, pursuant to the [personal interest] exception, the employees were pursuing personal interests wholly separate and apart from the entity by whom they were employed." *Fischer*, 38 F. Supp. 3d at 353 (alterations added and citation omitted). "Courts in the Western District of New York apply the intracorporate conspiracy doctrine to bar inmates' conspiracy claims against DOCCS." *Id.* (collecting cases); *see also Richard v. Dignean*, 126 F. Supp. 3d 334, 339 (W.D.N.Y. 2015) (same). To adequately plead the personal interest exception, a plaintiff must allege "that the individuals were pursuing personal interests wholly separate and apart from the entity," accordingly, "more is required of a plaintiff than simply alleging that the defendants were motivated by personal bias against the plaintiff." *Vega v. Artus*, 610 F. Supp. 2d 185, 205 (N.D.N.Y. 2009) (citation omitted).

**Tripathy fails to plead the personal interest exception.** Given his *pro se* status, I construe Tripathy's pleadings liberally. *Fischer*, 38 F. Supp. 3d at 350 (citing *Green v. United States*, 260 F.3d 78, 83 (2d Cir.2001)). Tripathy seems to argue that the personal interest exception "applies" because "Defendants … directly and personally benefitted from denial of relief." (Reply at 19, ECF No. 53.) He alleges that Defendants received "extra bonus[es], promotions, and other benefits." (*Id.* (alteration added).) I construe this as an attempt to plead the personal interest exception to the intracorporate conspiracy doctrine.

Here, Tripathy fails to allege that DOCCS employees personally benefited "at the time of the events alleged[.]" *See Borrello v. N.Y. State Dep't of Corr. Servs.*, No. 00–CV–177A, 2004 WL 2191565, at *2 (W.D.N.Y. Sept. 27, 2004) (denying a "motion to amend the complaint to reallege the conspiracy claim" since the plaintiff's amended allegations all pertained to defendants who "are or were" DOCCS employees at the time of the events alleged). While Tripathy's allegations that Defendants "ridiculed" his religious beliefs may demonstrate a personal bias, he has not adequately alleged that they were pursuing personal interests "wholly separate and apart" from their scope of employment with DOCCS in denying him smoke-free accommodations. (Proposed 2d Am. Compl. at 35–36 ¶¶ 5(b), (c), (d), ECF No. 47.) In fact, Tripathy concedes that DOCCS personnel were not pursuing their own interests, but appear to have been enforcing DOCCS policy, even if it was not perfectly enforced. (*Id.* at 17 ¶ 2(m) ("Policy [sic] was DOCCS-wide, across facilities, so [Defendants] were unwilling to change it and provide exceptions … [to] the smoking policy.") (alterations added).)

Because Tripathy fails to adequately allege the personal interest exception, both his Section 1983 and 1985 conspiracy claims are barred by the intracorporate conspiracy doctrine.

***Separately, Tripathy fails to allege any Section 1983 claims for failure to plead personal involvement.***

Tripathy attempts to allege two Section 1983 claims: (1) deliberate indifference; and (2) conspiracy. Both claims fail because Tripathy fails to plead the personal involvement of individual Defendants, as required to recover damages under 42 U.S.C. § 1983.

**Legal standard.** "To state a valid claim under 42 U.S.C. § 1983, a plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875–76 (2d Cir. 1994). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against a government official under 42 U.S.C. § 1983, a plaintiff must plead personal involvement. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"). Pleading liability under the theory of *respondeat superior* is

insufficient. *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Instead, "a plaintiff must plead and prove that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Personal involvement means "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

**Tripathy fails to state a Section 1983 conspiracy because he does not allege personal involvement of DOCCS personnel.** Tripathy's Section 1983 conspiracy claim fails because he inadequately alleges personal involvement. Tripathy does not allege that any *named* Defendants were involved in a conspiracy to violate his rights but that "Defendants" all "individually" conspired with "DOCCS Officials in Albany." (Proposed 2d Am. Compl. at 35–37, ¶ 5(b), (c), (d), ECF No. 47.) Because Tripathy inadequately alleges personal involvement by generally referring to the actions of "Defendants," he fails to state a Section 1983 conspiracy claim. *See Fischer*, 38 F. Supp. 3d at 356 (personal involvement was inadequately pled with respect to some defendants when the plaintiff failed to name them in his allegations); *Hernandez v. Goord*, 312 F. Supp. 2d 537, 547 (S.D.N.Y. 2004) (personal involvement was

inadequately pled when the plaintiff did not mention the defendant's name "at all in the body of the complaint" except in his "list of defendants").

**Likewise, Tripathy fails to state a Section 1983 deliberate indifference claim for failure to allege personal involvement.** Although Tripathy makes some adequate allegations to plead a deliberate indifference claim, his claim ultimately fails because he inadequately alleges personal involvement.

As with Tripathy's Section 1983 conspiracy claim, his deliberate indifference claim ultimately fails for failure plead personal involvement. Nonetheless, to plead personal involvement, a prisoner must allege that a *named* defendant individually caused a violation of Section 1983. *See, e.g.*, *Tangreti*, 983 F.3d at 619 ("Tangreti must therefore establish that Bachmann violated the Eighth Amendment by Bachmann's own conduct, not by reason of Bachmann's supervision of others who committed the violation.").

In this case, Tripathy does not name any individual Defendants to support his claim. Instead, he vaguely alleges that he "met and wrote" to Defendants "personally" at all three facilities and that therefore his complaint shows "personal involvement and liability of Defendants." (Proposed 2d Am. Compl. at 16, ¶ 2(l), ECF No. 47.). These allegations are wholly inadequate. Tripathy must allege that named defendants

were individually informed about the severity and duration of his ETS exposure and that they knew of and disregarded an excessive risk to his health. *Reid*, 2022 WL 1164524, at \*10. Even if Tripathy had named the Defendants to whom he wrote, sending letters and grievances to DOCCS personnel does not render them personally involved. *See, e.g., Mateo v. Fischer*, 682 F. Supp. 2d 423, 431 (S.D.N.Y. 2010) (a detailed response to an inmate's letter might suggest that the recipient has personal involvement, while a pro forma response does not); *Warren v. Goord*, 476 F. Supp. 2d 407, 413 (S.D.N.Y. 2007) (denial of a grievance not enough to show personal involvement). Accordingly, Tripathy's general references to "Defendants" do not show personal involvement and he fails to plead a Section 1983 deliberate indifference claim.

### *Tripathy fails to plead the subjective component of deliberate indifference.*

To plead a deliberate indifference claim alleging an Eighth Amendment violation, the plaintiff must allege that prison officials "have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Scott v. Hollins*, No. 96-CV-0351C, 2006 WL 1994757, at \*4 (W.D.N.Y. July 14, 2006) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).

"The deliberate indifference standard has an objective and a subjective component." *Id.* Objectively, a plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious

harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In the context of an ETS claim, the plaintiff must show that he has been exposed to "unreasonably high levels of ETS." *Helling*, 509 U.S. at 35. "The objective factor not only embraces the scientific and statistical inquiry into the harm caused by ETS, but also 'whether society considers the risk ... to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.'" *Warren v. Keane*, 196 F.3d 330, 333 (2d Cir.1999) (quoting *Helling*, 509 U.S. at 36).

Subjectively, a plaintiff must show more than a prison official's inadvertence or negligence. *Farmer*, 511 U.S. at 835; *Davidson v. Cannon*, 474 U.S. 344, 348–49 (1986). A plaintiff must allege that "the official *knows of* and *disregards* an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837 (emphasis added). Moreover, the "adoption of the smoking policy ... will bear heavily on the [subjective] inquiry into deliberate indifference." *Helling*, 509 U.S. at 36 (1993) (alteration added). But "*Helling* does not mandate smoke-free prisons." *Davidson v. Desai*, No. 03-CV-121S, 2019 WL 125999, at *32 (W.D.N.Y. Jan. 8, 2019), *aff'd*, 964 F.3d 122 (2d Cir. 2020) (collecting cases). "As long as reasonable efforts are made, 'imperfect enforcement of a non-smoking policy alone may not support a finding of deliberate

indifference.'" *Klein v. Fischer*, No. 9:13-CV-0437 BKS/TWD, 2015 U.S.
Dist. LEXIS 117764, 2015 WL 5174031, at *24 (N.D.N.Y. Sept. 2, 2015)
(District Judge's order that includes report and recommendation)
(cleaned up); *Davidson*, 2019 WL 125999, at *32 ("Elimination of smok-
ing in its entirety, however, is not required..."); *Eldridge v. Williams*, No.
10 CIV. 0423 LTS, 2013 WL 4005499, at *12 (S.D.N.Y. July 30, 2013)
("[M]ere imperfect enforcement of an indoor smoking ban in a prison, as
long as reasonable enforcement efforts are made, does not amount to
deliberate indifference.").

Here, I find that Tripathy inadequately alleges the subjective
component. Far from alleging actual knowledge and disregard to an un-
reasonable health risk, Tripathy alleges that he "met" with "Defend-
ants" and "wrote" them grievances about his ETS exposure. (Proposed
2d Am. Compl. ¶¶ 2(i), (l), [ECF No. 47](.)) Filing grievances is inadequate
to show Defendants acted with a culpable state of mind. *See Reid*, 2022
WL 1164524, at *10. Neither does Tripathy's "own belief" that his re-
quested accommodations were "appropriate" adequately show that De-
fendants unreasonably enforced their smoking policy in disregard to
health risks. *See Davidson*, 2019 WL 125999, at *32 n.23 (rejecting the
allegations that "defendants could have separated smoking and non-
smoking inmates into different housing block" as "undeveloped" due to
the "the realities of prison administration"). Tripathy even concedes that

his request for "reasonable accommodations," (Proposed 2d Am. Compl. at 14, ¶ 2(i), ECF No. 47), including a "100% smoke free Dorm" or a "short-term single room accommodation," (ECF No. 53-1, Ex. E), and a "100% segregated dorm facility[y] for non-smokers, where inmates cannot buy, possess, or use any tobacco products," (ECF No. 53-1, Ex. H), were denied pursuant to Defendant's efforts *to enforce* prison policy, (Proposed 2d Am. Compl. at 16–18, ¶ 2(m), ECF No. 47.) The "realities of prison administration," indicate Tripathy's requests were unreasonable. *Davidson*, 2019 WL 125999, at *32 n.23. Even if they were reasonable, he fails to allege Defendants made *unreasonable* efforts to enforce their smoking policy.

For the foregoing reasons, I report and recommend that all of Tripathy's Section 1985 and 1983 claims be found futile.

## QUALIFIED IMMUNITY

Finally, I decline to reach the issue of qualified immunity. I do not find Defendants adequately briefed this issue; Defendants' briefing states the applicable legal standard without providing meaningful analysis of its applicability to this case.

And Defendants failed to realize it is quite possible the right Tripathy alleges they violated was clearly established. As I discuss more fully below, this case is about Tripathy's exposure to environmental tobacco smoke, ("ETS"), which his religion mandates that he avoid. The Supreme Court has held that a prisoner "states a cause of action under

the Eighth Amendment by alleging that" prison officials "have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Helling* 509 U.S. at 35; *see also Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001) (noting that "[t]he threat to future health was clearly established" by the Supreme Court in *Helling*). Still, Defendants may renew their argument at summary judgment.

## CONCLUSION

For the reasons stated above, I recommend that the Hon. Frank P. Geraci, Jr., Senior District Judge, **DENY** Tripathy's motion to amend in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**UNLESS** otherwise ordered by the Hon. Frank P. Geraci, Jr., District Judge, any objections to this Report and Recommendation **must be filed** with the Clerk of Court within 14 days of service of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), 6(a) & (d), and W.D.N.Y. Loc. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Geraci.

**Failure to file objections, or to request an extension of time to file objections within 14 days of service of this Report**

**and Recommendation WAIVES the right to appeal the District Court's order.** *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990–91 (1st Cir. 1988).

Finally, the parties are reminded that, under W.D.N.Y. Loc. R. Civ. P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection and shall be supported by legal authority." **Failure to comply with these provisions may result in the District Court's refusal to hear the objection.**

**IT IS SO ORDERED.**

Dated:    February 12, 2024
          Rochester, NY

MARK W. PEDERSEN
United States Magistrate Judge